RAJIV DHARNIDHARKA (Bar No. CA-234756)
rajiv.dharnidharka@dlapiper.com
ANDREW D. DAY (Bar No. CA-300958)
andrew.day@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, California 94303-2250
Tel:   650.833.2000
Fax:   650.833.2001

Attorneys for Defendant
LUNERA LIGHTING, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE**

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD. AND GREEN DEAL LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>LUNERA LIGHTING, INC.,<br><br>Defendant. | CASE NO.  3:18-cv-05091-EMC<br><br>**DEFENDANT LUNERA LIGHTING, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date:     December 20, 2018<br>Time:    1:30 p.m.<br>Room:   Courtroom 5<br>Judge:   Hon. Edward M. Chen |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2

    A. The Parties' Agreement Contains A Broad Arbitration Provision. ....................... 2

    B. The JAMS Rules Provide For Provisional Relief. ................................................ 2

    C. Plaintiffs File Suit & Move For Writ Of Attachment; The Parties Agree To Arbitrate, But Plaintiffs Refuse To Take The Writ Motion Off Calendar. ............ 3

    D. The Court Denies The Writ Motion; Plaintiffs Move For Reconsideration. ......... 3

III. ARGUMENT .................................................................................................................. 4

    A. Plaintiffs' Motion Fails To Satisfy Rule 60(b) And Must Be Denied. ................... 4

    B. The Court Properly Applied Federal Law To Deny The Writ Motion. ................. 5

    C. The JAMS Rules Provide An Adequate Forum For Provisional Relief. ............... 8

    D. The JAMS Rules Do Not Authorize Judicial Relief. ........................................... 10

    E. Plaintiffs Will Not Be Prejudiced If Relief Is Delayed. ....................................... 11

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bateman v. U.S. Postal Serv.*,
231 F.3d 1220 (9th Cir. 2000) ..................................................................................................4

*China National Metal Products Import/Export Co. v. Apex Digital, Inc.*,
155 F. Supp. 2d 1174 (C.D. Cal. 2001) ............................................................................ passim

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ............................................................................................5, 6, 8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ..................................................................................................................6

*Ever-Gotesco Resources & Holdings, Inc. v. Pricesmart, Inc.*,
192 F. Supp. 2d 1040 (S.D. Cal. 2002) .........................................................................8, 11, 12

*In re S. Cal. Plastics, Inc.*,
165 F.3d 1243 (9th Cir. 1999) ..................................................................................................9

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) .................................................................................................................7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ......................................................................................................................7

*Shove v. Ayers*,
No. C08-2946 (PR), 2009 WL 2605372 (N.D. Cal. Aug. 25, 2009) ........................................4

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ............................................................................................ passim

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ......................................................................................................................7

*Twentieth Century-Fox Film Corp. v. Dunnahoo*,
637 F.2d 1338 (9th Cir. 1981) ..................................................................................................5

*U.S. v. Alpine Land & Reservoir Co.*,
984 F.2d 1047 (9th Cir. 1993) ..................................................................................................5

**STATUTES**

Cal. Code Civ. Proc. § 488.010 ....................................................................................................12

Cal. Code Civ. Proc. § 488.500 ........................................................................................................9

Cal. Code Civ. Proc. § 1281.8 .........................................................................................................7

Fed. R. Civ. Proc. 60(b) .............................................................................................................4, 5

9 U.S.C. § 2 ....................................................................................................................................6

**OTHER AUTHORITIES**

https://www.jamsadr.com/files/Uploads/Documents/JAMS-
    Rules/International/JAMS-International-Arbitration-Rules.pdf ................................................2

JAMS Rules, Art. 3 .........................................................................................................................2

JAMS Rules, Art. 3.1 ......................................................................................................................2

JAMS Rules, Art. 32.1 ..............................................................................................................3, 11

JAMS Rules, Art. 32.3 ............................................................................................................10, 11

## I. INTRODUCTION

On November 8, the Court properly denied Jiaxing Super Lighting Electrical Appliance Co. Ltd. ("Super Lighting") and Green Deal, Ltd.'s ("Green Deal") (together, "Plaintiffs") Motion for Right to Attach Order and Issuance of Writ of Attachment because federal law prohibits courts from granting provisional relief where equivalent relief is available from the arbitral tribunal selected in advance by the parties' arbitration agreement, as is the case here. The Court instructed Plaintiffs to move for reconsideration only if they located "authority indicating that a writ of attachment issued by the arbitrator would not be enforceable." ECF No. 33. Plaintiffs filed a brief styled as a Motion for Reconsideration on November 13 that does not meet the standard for reconsideration and does not meet the threshold addressed by the Court.

Plaintiffs' Motion is not a true motion for reconsideration, but a second bite at the apple. Instead of supplying new authority, Plaintiffs offer a single Ninth Circuit opinion from 2000 (which actually supports *Lunera's* arguments), a misreading of the JAMS International Arbitration Rules ("JAMS Rules"), and a patchwork of CCP sections, none of which explain why the arbitral tribunal cannot grant the requested relief. Plaintiffs argue that the arbitral tribunal lacks authority to order the U.S. Marshal to seize property (based on a website printout), yet Plaintiffs' Writ Motion does not identify any property to be seized and does not actually request any seizure of property. To be sure, Plaintiffs' Writ Motion sought only the equivalent of a prejudgment attachment lien—a type of relief that should not require law enforcement intervention.

Plaintiffs further argue that California law should control the issue of whether to defer to the arbitral tribunal, yet that position is contradicted by decades of Supreme Court and Ninth Circuit precedent. And, although Plaintiffs' Motion is peppered with baseless appeals to urgency, a writ of attachment would have no practical effect on whether Plaintiffs may collect on a future award. Any prejudgment attachment lien would merely fix Plaintiffs' claimed rights behind existing secured Lunera creditors. Plaintiffs' efforts to secure a writ of attachment from this Court—in violation of the parties' agreement to arbitrate all disputes—is a transparent effort to apply pressure during the parties' ongoing, parallel negotiations.

In short, the Court's November 8 Order was properly decided and Plaintiffs have not

identified a shred of evidence or law justifying reconsideration. Accordingly, and for the reasons discussed below, the Court should deny Plaintiffs' Motion.

## II. STATEMENT OF FACTS

### A. The Parties' Agreement Contains A Broad Arbitration Provision.

In November 2016, Super Lighting and Defendant Lunera Lighting, Inc. ("Lunera") entered into a Purchase And Development Agreement (the "Agreement"). Compl., Ex. A. The Agreement contains a broad, mandatory arbitration clause. Specifically, Section 12.9 ("Governing Law") provides in relevant part:

> Any dispute, controversy or claim arising out of or relating to this Agreement, including the formation, interpretation, breach or termination thereof, including whether the claims asserted are arbitral, will be referred to and finally determined by arbitration in accordance with the JAMS International Arbitration Rules. [….]

Compl., Ex. A, §12.9. The arbitration provision, as quoted above, specifically contains a clear delegation clause providing that the agreement to arbitrate encompasses "whether the claims asserted are arbitral." *Id.* Section 12.9 further provides that the Agreement "shall be governed by and construed in accordance with California law without regard to any conflicts of law principles," but does not specify whether state laws governing arbitration govern the arbitral proceedings. *Id*.

### B. The JAMS Rules Provide For Provisional Relief.

The JAMS Rules[1] provide for provisional, pre-arbitration relief. Specifically, under the JAMS Rules, "[a] party in need of emergency relief prior to the appointment of an Arbitrator may notify JAMS International and all other parties in writing of the relief sought and the basis for an award of such relief." JAMS Rules, Art. 3. Following receipt of such a request, "JAMS International shall promptly appoint an Emergency Arbitrator to rule on the emergency request. In most cases the appointment of an Emergency Arbitrator will be done within 24 hours of receipt of the application and any requested advance." JAMS Rules, Art. 3.1. The JAMS Rules further provide that "the Tribunal may take whatever interim measures it deems necessary, including

---

[1] The JAMS Rules are published at https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/International/JAMS-International-Arbitration-Rules.pdf.

injunctive relief and measures for the protection or conservation of property, including, at the Tribunal's discretion, measures to secure the payment of any award that might be rendered." JAMS Rules, Art. 32.1.  The JAMS Rules do not impose any limits on the Emergency Arbitrator's powers to grant provisional relief.  *See* JAMS Rules, *passim*.

### C. Plaintiffs File Suit & Move For Writ Of Attachment; The Parties Agree To Arbitrate, But Plaintiffs Refuse To Take The Writ Motion Off Calendar.

On August 20, 2018, Plaintiffs filed their Complaint in this Court.  In the Complaint, Plaintiffs allege a single cause of action for breach of the Agreement arising from Lunera's alleged failure to pay for products ordered and delivered pursuant to the terms of the Agreement.  Compl., ¶¶ 36–41.  Plaintiffs included Green Deal as a plaintiff even though it is not a party to the Agreement.  *Id.*  On August 31, Plaintiffs filed a Motion For Right To Attach Order And Issuance Of Writ Of Attachment (the "Writ Motion").  ECF No. 11.  In the Writ Motion, Plaintiffs demand that the Court issue a Right to Attach Order and Order for Issuance of Writ of Attachment against "corporate property" in the amount of $9,995,876.43.  *Id.* at 9.  On September 13, Lunera moved to compel arbitration of the parties' entire dispute.  ECF No. 16.  In response, Plaintiffs agreed to stay this action pending the final resolution of an arbitration before JAMS.  ECF No. 26.  Plaintiffs refused, however, to take the Writ Motion off calendar.

### D. The Court Denies The Writ Motion; Plaintiffs Move For Reconsideration.

Following briefing and a November 8 hearing, the Court denied Plaintiffs' Writ Motion in its entirety on the basis that Ninth Circuit precedent forbids courts from granting provisional relief where that relief is available from the arbitral tribunal.  ECF No. 33 (the "Order") (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999)).  The Court informed Plaintiffs that they could move for reconsideration if they located "authority indicating that a writ of attachment issued by the arbitrator would not be enforceable."  *Id.*

On November 13, Plaintiffs filed a Motion for Reconsideration (the "Motion") citing only one case from 2000 and a patchwork of CCP sections.  ECF No. 36.  Plaintiffs badly mischaracterized the JAMS Rules.  *Id.*  And, while never raising the issue in their original motion, original proposed order, or original reply brief, Plaintiffs' motion for reconsideration raised the

possibility of "seizing" assets through the U.S. Marshal's Office, even though Plaintiffs have never identified any "assets" that could be seized. *Id.*

On November 14, Super Lighting filed a request and a demand for arbitration with JAMS International. Declaration of Rajiv Dharnidharka ("RD Decl."), ¶ 3, Exs. A, B. Super Lighting did not seek any provisional or injunctive relief from the arbitral tribunal in its filing. *Id.* Super Lighting has not requested an emergency appointment with its filing either. *Id.*

## III. ARGUMENT

### A. Plaintiffs' Motion Fails To Satisfy Rule 60(b) And Must Be Denied.

As an initial matter, Plaintiffs' Motion entirely fails to satisfy Rule 60(b)'s requirements for seeking reconsideration of any court order. "Rule 60(b) [] provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) voiding of the judgment; (5) satisfaction of the judgment; (6) any other reason justifying relief." *Shove v. Ayers*, No. C08-2946 (PR), 2009 WL 2605372, at *1 (N.D. Cal. Aug. 25, 2009); Fed. R. Civ. Proc. 60(b). Subparagraphs (4) and (5) are not relevant here because no judgment has yet been rendered. Likewise, subparagraph (3) is not relevant because Plaintiffs have never alleged that Defendant has engaged in any fraudulent act. *See* Mot., *passim*. Accordingly, to avoid dismissal, Plaintiffs must articulate a sufficient basis under subparagraphs (1), (2), and/or (6).

Plaintiffs have not identified to any "mistake, inadvertence, surprise, or excusable neglect" justifying reconsideration under subsection (1). Fed. R. Civ. Proc. 60(b)(1). Typically, this prong applies where the movant's counsel failed to comply with a procedural rule—e.g., a filing deadline—on account of the counsel's negligence. *See Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1222–24 (9th Cir. 2000) (discussing the rule). Nowhere do Plaintiffs claim that the Court's Order resulted from a mistake or negligence of legal counsel, or the equivalent. Mot., *passim*. Accordingly, reconsideration is not justified under subsection (1).

Plaintiffs also have not identified any "newly discovered evidence" that "could not have been discovered" in advance of the Court's decision. Fed. R. Civ. Proc. 60(b)(2). Plaintiffs cite

no factual "evidence" whatsoever and offer no declaration in support of their Motion. Mot., *passim.* They also fail to cite any "new" authority. Plaintiffs cite only one case—from 2000—and CCP sections that have been on the books since at least the 1980s. *See* Mot. at 2–4 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1133–34 (9th Cir. 2000), and various sections of Title 6.5 and Title 9 of the CCP). All of that authority was discoverable before Plaintiffs filed their Writ Motion. Accordingly, reconsideration is not justified under subsection (2).

Plaintiffs likewise have not established "any other reason justifying relief." Fed. R. Civ. Proc. 60(b)(6). "Although couched in broad terms, subparagraph (6) requires a showing that the grounds justifying relief are extraordinary." *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981); *see U.S. v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) ("Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice."). Plaintiffs make no such showing. The Motion contains no new law and identifies no changed circumstances. Plaintiffs claim that relief is urgently needed, yet their actions and the facts show otherwise. *See* Section III.E. Plaintiffs also fail to show how the Court's Order works a "manifest injustice," where equivalent relief is available from the arbitrator. Plaintiffs have not established even a bare basis for reconsideration, let alone an "extraordinary" one. Plaintiffs therefore cannot seek reconsideration under subsection (6).

**B.     The Court Properly Applied Federal Law To Deny The Writ Motion.**

Should the Court reach Plaintiffs' arguments despite their noncompliance with Rule 60(b), the Court should deny the Motion because Plaintiffs misapply Supreme Court and Ninth Circuit precedent. For decades, federal courts have held that the Federal Arbitration Act ("FAA") controls the enforcement of commercial arbitration agreements and state laws limiting arbitration are unenforceable unless expressly incorporated into the arbitration agreement and consistent with the FAA. Ignoring that body of law, Plaintiffs argue that California law applies only because the Agreement contains a choice of law provision specifying California law. Mot. at 2–3. That argument is inconsistent with decades of federal precedent and must be rejected; it is also inconsistent with the one and only case cited in Plaintiffs' Motion, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000).

The FAA governs the Court's interpretation and enforcement of the parties' arbitration agreement.[2]  *Chiron*, 207 F.3d at 1130 ("Because the Agreement is 'a contract evidencing a transaction involving commerce,' it is subject to the FAA.") (citing 9 U.S.C. § 2); *Simula*, 175 F.3d at 719 ("Federal substantive law governs the question of arbitrability").  "The [FAA] reflects Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause" and "embodies a clear federal policy in favor of arbitration." *Id.*  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d 1130.  "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

In *Simula*, the Ninth Circuit applied the FAA—not state law—in affirming a district court's decision to deny provisional relief where the arbitral rules offered such relief.  175 F.3d at 726.  The Ninth Circuit began its analysis by emphasizing that the FAA controlled.  *Id.* at 719–20.  Then, applying the FAA, the Ninth Circuit affirmed the lower court's deference to the arbitral tribunal's authority to grant interim relief.  *Id.* at 725–26.  "Because the district court correctly concluded that all of Simula's claims were arbitrable and the ICC arbitral tribunal is authorized to grant the equivalent of an injunction," the Ninth Circuit explained, "it would have been

---

[2] Plaintiffs cite numerous CCP sections regulating the issuance of writs of attachment by state courts. *See* Mot. at 2–4.  Those CCP sections are not relevant to the Court's analysis under the FAA, which requires that the Court determine whether the Plaintiffs' requested relief is encompassed by the parties' arbitration agreement and, if so, whether that relief (or the equivalent) is available from the arbitrator, in which case the Court must defer to the arbitrator. *China National Metal Products Import/Export Co. v. Apex Digital, Inc.*, 155 F. Supp. 2d 1174, 1181-82 (C.D. Cal. 2001) (citing *Simula*, 175 F.3d at 716).  Plaintiffs attempt to distinguish *Simula* and *China National* on the grounds that these cases do not address these sections of the CCP (*see* Motion at 4 n.2); Plaintiffs fail to acknowledge that the cases do not address the CCP because the CCP is irrelevant.

inappropriate for the district court to grant preliminary injunctive relief." *Id.* at 726. That ruling is an application of the FAA's policy favoring arbitration and mandate that courts resolve any doubts "in favor of arbitration." *Id.* at 719 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Ninth Circuit did not apply state law to determine whether the district court properly deferred to the arbitrator. *Id.* at 725–26.

Likewise, in *China National*, the Central District applied federal—not state—law in determining that it lacked authority to grant a writ of attachment. 155 F. Supp. 2d at 1180–82; Mot. at 4 n.2 (acknowledging that the *China National* court "applied federal law"). "*Simula* dictates that the court must respect [the parties' agreement] and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief," the court concluded. *Id.* at 1182. "The inquiry under *Simula* is limited to asking whether the arbitral rules authorize provisional relief, which [the arbitral tribunal's] rules do." *Id.*

Both *Simula* and *China National* illustrate the general rule that the FAA controls the interpretation and enforcement of arbitration agreements even if the parties' agreement contains a choice of law provision specifying state law.[3] This rule is rooted in Supreme Court precedent. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995). In *Mastrobuono*, the Court considered whether a choice of law provision specifying New York law barred an arbitral panel from awarding punitive damages where New York state law forbid that practice. *Id.* at 53–54. The Court ruled that, notwithstanding the choice of law provision, New York's arbitration rules did not apply. *Id.* at 64. The Court explained, "the FAA not only declared a national policy favoring arbitration, but actually withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 56 (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)) (quotations omitted). That is, "the FAA ensures that [an] agreement will be enforced according to its terms even if a rule of state law

---

[3] California law does not control, but would require the same result. In its Opposition to the Writ Motion, Lunera explained how California law permits a party to apply for a provisional relief under CCP § 1281.8 *only if* equivalent relief is unavailable from the arbitrator. ECF No. 28, at 6.

1   would otherwise exclude such claims from arbitration." *Id.* at 58.

2   Plaintiffs' only case, *Chiron v. Ortho Diagnostic Systems, Inc.*, confirms that federal law
3   governs whether to compel arbitration of Plaintiffs' request for provisional relief. 207 F.3d 1126
4   (9th Cir. 2000). In *Chiron*, the Ninth Circuit considered whether the district court "erred in
5   concluding that federal law governs" where the parties' agreement included a choice of law
6   provision specifying New Jersey law. *Id.* at 1130. Applying *Mastrobuono*, the Ninth Circuit
7   found that a parties' inclusion of a choice of law provision "does not incorporate state decisional
8   law pertaining to the allocation of power between courts and arbitrators; rather, at most the clauses
9   read together create an ambiguity that must be construed in favor of arbitration." *Id.* On that
10  basis, the Ninth Circuit ruled that "the FAA governs the allocation of authority between courts and
11  arbitrators," notwithstanding state law. *Id.* at 1131.

12  This Court's Order is consistent with *Simula*, *China National*, *Mastrobuono*, and *Chiron*,
13  and should be upheld. It is also consistent with *Ever-Gotesco Resources & Holdings, Inc. v.
14  Pricesmart, Inc.*, 192 F. Supp. 2d 1040, 1044-45 (S.D. Cal. 2002), cited in Defendants' opposition
15  to the Writ Motion and discussed in detail at the November 8 hearing, holding a dilatory plaintiff's
16  feet to the fire when attempting to avoid arbitration of the issue. As this Court correctly noted,
17  *Simula*—and federal law—controls whether a party may seek relief encompassed by a broad
18  arbitration agreement, including provisional relief. And, under *Simula*, "it is inappropriate for the
19  district court to grant provisional relief where that relief is available from the arbitrator." ECF No.
20  33 (Order). Although Plaintiffs argue that *Simula* and *China National* do not control because
21  those courts applied federal law, Plaintiffs are mistaken. As discussed above, both courts properly
22  applied the FAA. Accordingly, because *Simula* controls and because Plaintiffs have not presented
23  any viable argument to the contrary, the Court should uphold its Order and deny Plaintiffs'
24  Motion.

25  **C.    The JAMS Rules Provide An Adequate Forum For Provisional Relief.**

26  The Court should also reject Plaintiffs' claim that inadequate relief is available under the
27  JAMS Rules. The JAMS Rules expressly provide for prompt, pre-arbitration provisional relief.
28  *See* Section II.B. Now, unlike their original motion that ignored the arbitration issue all together,

Plaintiffs suggest that the JAMS Rules are inadequate because an arbitrator cannot order the U.S. Marshal to seize or levy property. Mot. at 4. Yet Plaintiffs have never identified any specific property that they wish to seize or levy. Plaintiffs' references to the U.S. Marshal and seizures of property are red herrings that must be rejected.

Through a writ of attachment, Plaintiffs seek only to place Lunera's other creditors on notice that Lunera's assets may be subject to a judgment in the future. Although writs of attachment *may* involve seizure of property under certain circumstances, Plaintiffs never requested an order seizing property and never even identified property that could be seized. *See* Writ Motion, *passim*; *see* Motion, *passim*. On the contrary, Plaintiffs have merely requested to "attach" nonspecific "corporate property" totaling "9,995,876.43"—the amount in controversy in this (stayed) action. Writ Motion, at 3. Against this backdrop, Plaintiffs' new references to law enforcement seizures of property are nonsensical as discussed at the November 8 hearing.

What Plaintiffs sought in their original Writ Motion is nothing more than an attachment lien. *See* Cal. Code Civ. Proc. § 488.500 (explaining that under California law, "[a] levy on property under a writ of attachment creates an attachment lien on the property…."). An attachment lien serves only to establish a creditor's priority over subsequent liens and is not perfected until judgment is rendered. *In re S. Cal. Plastics, Inc.*, 165 F.3d 1243, 1246 (9th Cir. 1999) (explaining that "an attachment lien acts as a placemarker, ensuring the creditor's spot in the priority line until the creditor can obtain judgment."). Plaintiffs have not explained why the arbitral panel cannot issue the equivalent of an attachment lien establishing Plaintiffs' purported rights vis-à-vis any subsequent lienholders pending arbitration of Plaintiffs' claims. *See Simula*, 175 F.3d at 726 (explaining that a tribunal must only be empowered to grant "the equivalent" of relief available from a court).

Even assuming *arguendo* that the arbitral panel cannot issue the equivalent of an attachment lien for lack of enforcement powers, that is not a sufficient basis for granting the Writ Motion. In *China National*, the Central District considered whether a court may grant interim relief where arbitral relief is effectively unavailable for lack of an enforcement mechanism. 155 F. Supp. 2d at 1180–82. The court concluded that the absence of an enforcement mechanism did not

justify granting provisional relief:

> [W]hether or not China National can ultimately obtain a writ of attachment under [the arbitral rules] is irrelevant to the question whether this court can award such relief.  The inquiry under *Simula* is limited to asking whether the arbitral rules authorize provisional relief, which CIETAC's rules do.  **China National must accept the consequences of the provisions of the agreement to arbitrate if there is no people's court with jurisdiction to which CIETAC can submit an application for a writ of attachment or if it is otherwise unsuccessful in obtaining such provisional relief.**

*Id.* (emphasis added).  In other words, under the FAA, courts must defer to the arbitrator where provisional relief is merely authorized.

### D. The JAMS Rules Do Not Authorize Judicial Relief.

Plaintiffs' claim that the JAMS Rules allow a party to seek interim relief from the Court is likewise misplaced.  According to Plaintiffs, Article 32.3 of the JAMS Rules authorizes Plaintiffs to seek a writ of attachment from the Court "because [JAMS] recognizes its own inherent lack of enforcement power."  Mot. at 3.  In fact, Article 32.3 authorizes no such relief.

As an initial matter, the scope and meaning of Article 32.3 is for the arbitrator to decide, not the Court.  The parties' Agreement contains an express delegation clause providing that "[a]ny dispute…relating to this Agreement…including whether the claims asserted are arbitral, will be referred to and finally determined by arbitration in accordance with the [JAMS Rules]."  Compl., Ex. A, § 12.  Accordingly, the Court must defer to the arbitral panel as to whether Article 32.3 permits Plaintiffs to approach the Court to seek relief otherwise obtainable from the arbitral panel.

That aside, Article 32.3 plainly serves only to establish that seeking interim relief from a court will not be interpreted as *waiving* one's right to arbitrate; it does not actually authorize *seeking* relief from a court.  *See* JAMS Rules, Art. 32.3.  In its entirety, Article 32.3 states:

> A request for interim measures addressed by a party to a judicial authority will not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

JAMS Rules, Art. 32.3.  This provision ensures that parties may contract for the right to seek judicial relief under certain circumstances without surrendering the right to compel arbitration.  For example, the parties' Agreement provides that notwithstanding the arbitration provision, the parties may seek injunctive relief from a court for the singular purpose of protecting a party's

1  intellectual property rights.  Compl., Ex. A, § 12.9.  Article 32.3 cannot, however, be interpreted as
2  empowering a party to seek any particular relief from a court.  That is especially true when read in
3  context with Article 32.1, which confirms that the arbitral tribunal itself is empowered to "take
4  whatever interim measures it deems necessary, including injunctive and measures for the
5  protection or conservation of property…."  JAMS Rules, Art. 32.1.

6  Even if the Court were to interpret Article 32.3 and conclude that it authorizes Plaintiffs to
7  seek provisional relief from the Court, *Simula* bars the Court from granting such relief.  *See Ever-*
8  *Gotesco Resources & Holdings, Inc.*, 192 F. Supp. 2d at 1044.  In *Ever-Gotesco*, the plaintiffs
9  argued that a provision of the applicable arbitral rules authorized seeking interim relief from the
10  court.  *Id.* at 1043.  After rejecting that argument on other grounds, the court added that, "[e]ven
11  assuming this Court were to entertain their request and grant relief thereon the Ninth Circuit has
12  expressly forbidden such relief when an arbitral tribunal can grant the same."  *Id.* at 1044.  Thus,
13  under the FAA—and its policy of favoring arbitration—the Court must defer to the arbitral
14  tribunal, even if the arbitral rules do not prohibit seeking equivalent relief from a court.

15  **E.     Plaintiffs Will Not Be Prejudiced If Relief Is Delayed.**

16  Plaintiffs would have the Court believe that they will suffer harm unless the Court grants
17  their Writ Motion immediately.  *See* Mot. at 1 ("Given the urgency of the matter…any delay
18  would be highly prejudicial….").  Nothing could be further from the truth.

19  Plaintiffs' own actions belie their claimed urgency.  After filing the Complaint on August
20  20, Plaintiffs waited nearly two weeks to file their Writ Motion.  *See* ECF Nos. 1, 11.  Then, after
21  the parties agreed to arbitrate their dispute—and after Lunera's counsel informed Plaintiffs'
22  counsel that emergency provisional relief is available under the JAMS Rules—Plaintiffs elected to
23  forego seeking emergency arbitral relief and instead maintain their Writ Motion.  RD Decl., ¶ 4.
24  After the Court denied their Writ Motion on November 8, Plaintiffs again refused to seek
25  provisional relief from the arbitrator, choosing instead to file a poorly-researched "motion for
26  reconsideration."  ECF No. 36.  Then, on November 14, Super Lighting finally filed a demand for
27  arbitration, but did not include any request for provisional relief or for an emergency arbitrator
28  appointment.  RD Decl., Ex. B.  These actions are inconsistent with Plaintiffs' appeals to urgency,

1  as was the case in *Ever-Gotesco*. 192 F. Supp. 2d at 1044-45.

2  Moreover, granting Plaintiffs' Writ Motion, in its current form, will not afford Plaintiffs
3  the relief they now claim to seek: seizure of property by the U.S. Marshal. As discussed above,
4  Plaintiffs have never explained which "corporate property" they seek to levy, nor have they
5  identified accounts receivable, account deposits, or any other assets totaling that amount. *See* ECF
6  Nos. 11, 36, *passim.* Plaintiffs now insist that the Court direct a writ to a "levying officer" who
7  will execute the writ, but Plaintiffs fail to identify any property against which a writ would issue.
8  Mot. at 4; *see* Cal. Code Civ. Proc. § 488.010 ("The writ of attachment shall include the following
9  information: [] A description of the property to be levied upon to satisfy the attachment."). Thus,
10 even if granted, Plaintiffs' Writ Motion will not result in immediate relief but will likely spawn
11 motion practice regarding the identification of any property to which the writ may be directed.

12 Finally—and more fundamentally—there is no "urgency" justifying an immediate issuance
13 of a writ of attachment because any writ order—i.e., an attachment lien—will not materially affect
14 the status quo. A writ order, if issued, would achieve nothing more than to establish the priority of
15 Plaintiffs' claims behind other Lunera secured creditors. Plaintiffs have not explained why
16 seeking relief under the JAMS Rules—which provide for expedited emergency interim relief—
17 would prejudice Plaintiffs' ability to collect on any future award.

18 **IV.   CONCLUSION**

19 For each of the foregoing reasons, Lunera respectfully requests that the Court deny
20 Plaintiffs' Motion in its entirety.

21 Dated:  November 19, 2018            DLA PIPER LLP (US)

22                                      By: /s/ *Rajiv Dharnidharka*
23                                         RAJIV DHARNIDHARKA
                                           ANDREW D. DAY
24                                         Attorneys for Defendant
                                           LUNERA LIGHTING, INC.