UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LUNERA LIGHTING, INC.,<br><br>Defendant. | Case No. 18-cv-05091-EMC (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 159 |

Plaintiff Super Lighting and non-party John Bruggeman have filed a joint discovery letter brief concerning Bruggeman's assertions of attorney-client privilege. ECF No. 159. By way of background, Bruggeman is the former CEO and a former board member of the judgment debtor Defendant Lunera Lighting, Inc. ("Lunera"). Super Lighting subpoenaed Bruggeman as part of its efforts to enforce and collect on its $14.4 million judgment against Lunera, a dissolved and defunct Delaware corporation with no assets. Super Lighting is investigating Lunera's affairs and the conduct of its former officers and directors prior to dissolution, including transfers of Lunera's assets.

Bruggeman has redacted a large number of documents based on the attorney-client privilege – not a privilege held by himself, but instead a privilege he says is held by Lunera,[1] and he claims to remain duty-bound to protect the corporation's privilege. Super Lighting has decided that it will not challenge any redactions concerning the underlying arbitration or unrelated litigation involving Lunera. Super Lighting is, however, challenging (i) all other redactions on

---

[1] Consistent with that position, every single entry in Bruggeman's 85-page redaction log states that the basis for the claim of privilege is "Attorney Client Communication with Corporation's Outside General Counsel." That statement makes clear the corporation was the client and was the holder of the privilege, not Bruggeman personally.

1  privilege grounds because those documents concern, for example, the transfers of Lunera's assets,
2  Super Lighting and Lunera's outstanding debt, and board meetings and minutes regarding asset
3  transfers and Super Lighting; and (ii) redactions where neither the document itself nor its
4  corresponding description in the amended privilege log provide Super Lighting with any ability to
5  determine the nature of the allegedly privileged communication and whether it wishes to challenge
6  the redaction. Super Lighting contends that Lunera no longer possesses any valid attorney-client
7  privilege because it is defunct, and even if it did, Super Lighting argues that Bruggeman cannot
8  assert the privilege in his personal capacity to protect his own private interests as a former Lunera
9  director. Bruggeman disagrees, contending that he has ongoing fiduciary obligations to Lunera
10 despite no longer being associated with the company, and he also contends that under Delaware
11 law Lunera as a company still exists.
12         Super Lighting has the better of the argument that Lunera no longer has a viable attorney-
13 client privilege. "Attorney-client privilege survives the death of a client if the client is a natural
14 person, but the weight of authority suggests otherwise if the client is a corporation." *Official
15 Comm. of Admin. Claimants ex rel. LTV Steel Co., Inc. v. Moran*, 802 F. Supp. 2d 947, 948-49
16 (N.D. Ill. 2011) (citing cases). "Absent some compelling reason to the contrary, the attorney-
17 client privilege does not survive the death of the corporation. The different treatment for
18 individuals and corporations makes sense, because once the business of a corporation is
19 completely wound up, the company no longer has legal interests to protect or a reputation to
20 maintain." *Id*. at 949 (simplified and citing cases). "To determine whether a corporation has
21 'died,' courts should look to practical business realities rather than technical legal status." *Id*.; *see
22 also In re Kior, Inc*., 621 B.R. 313, 325-26 (Bankr. D. Del. 2020) (same; citing cases); *City of
23 Rialto v. U.S. Dep't of Defense*, 492 F. Supp. 2d 1193, 1200 (C.D. Cal. 2007) ("A dissolved
24 corporation does not have the same concerns as a deceased natural person and therefore has less
25 need for the privilege after dissolution is complete. As there are usually no assets left and no
26 directors, the protections of the attorney-client privilege are less meaningful to the typical
27 dissolved corporation."); *United States v. Walters*, 2020 WL 1934803, at *2 (S.D. Miss. April 21,
28 2020) ("The weight of federal authority supports a holding that there is a presumption the

2

1    attorney-client privilege is no longer viable after a business entity ceases to function."); *In re*

2    *Fundamental Long Term Care, Inc.*, 2012 WL 4815321 at *9 (Bankr. M.D. Fla. Oct. 9, 2012)

3    ("THMI appears to be administratively dissolved.  Regardless of whether it is formally dissolved,

4    all of the parties concede that the company has not done business since 2006.  There does not

5    appear to be anybody around to speak on THMI's behalf.  So there is no one left to assert or waive

6    the privilege on THMI's behalf."); *Lewis v. U.S.*, 2004 WL 3203121 at *5 (W.D. Tenn. Dec. 7,

7    2004) ("[W]hen VisionAmerica was ordered bankrupt, the company became defunct.  The

8    attorney-client privilege cannot be applied to a defunct corporation.").

9          Here, it is undisputed that Lunera dissolved on July 25, 2019.  ECF No. 65-2 (Certificate

10   of Dissolution).  "All directors of Lunera resigned their positions as part of the dissolution and all

11   officers had already resigned."  ECF No. 78 at 3.  Lunera no longer exists or conducts business.

12   *See id*. at 4 ("DLA has explained to Duane Morris that it has no client in this matter and that no

13   one speaks for the dissolved Lunera, which is why DLA moved to withdraw as counsel.").  Judge

14   Chen refused to allow Super Lighting to pursue post-judgment discovery against Lunera and a

15   judgment debtor exam of Lunera because "there is no person whom the Court can compel to

16   respond to discovery or attend for Super Lighting in an examination of judgment debtor."  ECF

17   No. 81 at 1.

18         In response, Bruggeman relies on Delaware Corporations Code § 278, which states:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

3

1     "At common law, dissolution marked a corporation's 'civil death,' and all actions against

2 the corporation abated. The statutory provisions found in 8 Del. C. §§ 278-282 supplant and

3 supersede the common law, by prolonging a corporation's existence and its exposure to liability."

4 *In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 702 (Del. 2013).

> Those same provisions also shield a dissolved corporation's directors and shareholders from liability in specified circumstances. To facilitate the winding-up of a dissolved corporation's affairs, § 278 extends the (post-dissolution) corporate existence for three years. Section 279 independently authorizes the appointment of a receiver "at any time" for specified purposes. Sections 280-281(b) outline planning procedures whereby a corporation must provide for future post-dissolution claims, pay existing claims, and distribute any remaining assets to shareholders. Finally, §§ 281(c) and 282 provide a "safe harbor" from liability to directors and shareholders of corporations that have complied with § 281(a) or (b). *Id*. at 702-03.

The continued legal existence of a corporation under the wind-up provisions of Delaware law does not change the analysis for purposes of the attorney-client privilege because in determining whether a corporation still exists for privilege purposes, courts look to practical reality, not legal technicalities. *See In re Kior*, 621 B.R. at 325 ("To determine whether a corporation has 'died,' courts should look to practical business realities rather than technical legal status."); *LTV Steel Co.*, 802 F. Supp. 2d at 949 ("A completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status."); *Walters*, 2020 WL 1934803 at *3 ("Beeler points out that Total Care was administratively dissolved, not formally dissolved. Beeler argues that Total Care is not prevented from conducting business as a result of the administrative dissolution. However, to determine whether a corporation has 'died,' courts should look to practical business realities rather than technical legal status. According to Defendant, neither Prime Care nor Total Care conducts any business. Beeler does not contradict this assertion. The Court finds that these entities have ceased to function for purposes of determining whether the attorney-client privilege is viable.") (simplified); *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321 at *9 (same). Indeed, the plain language of Delaware Corporations Code § 278 states that the corporation's continued legal existence is "not for the purpose of continuing the business for which the corporation was organized."

Here, the practical reality is that Lunera has not existed as a business for at least two years.

4

Bruggeman's reliance on Delaware Corporations Code § 278 is an unpersuasive attempt to rely on technical legal status.  The business is dead, and it no longer possesses the attorney-client privilege.  The Court therefore overrules Bruggeman's claims of attorney-client privilege.

**IT IS SO ORDERED.**

Dated: July 1, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge